*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY B. FRASER and DANIELLE FRASER,

Plaintiffs-Appellants,

v

EILEEN METTY ROGERS, DALE METTY, JERRY METTY, and WILLIAM R. GENTNER,

Defendants,

and

DOUGLAS A. TAYLOR, DEBORAH L. TAYLOR, THOMAS KEVIN KISSEL, NICHOLAS KISSEL, KENNETH POLLACK, LYNN POLLACK, LYNDA SCHILLING, RICKY A. LUEBKE, and LISA N. LUEBKE, as assignees of EILEEN METTY ROGERS, DALE METTY, JERRY METTY, and WILLIAM R. GENTNER,

Appellees.

UNPUBLISHED
September 24, 2019

Nos. 342113; 344010
Lenawee Circuit Court
LC No. 16-005692-CH

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

In Docket No. 342113, plaintiffs appeal as of right the trial court's order granting summary disposition in favor of appellees and dismissing plaintiffs' quiet title action. Appellees proceeded as party-defendants in the trial court, but participated as "successors in interest to" the parties originally named by plaintiffs as defendants. In Docket No. 344010, plaintiffs appeal as of right the trial court's postjudgment order granting attorney fees and costs in favor of appellees. Plaintiffs generally contend that the trial court erred in determining that appellees had standing, that plaintiffs were not entitled to quiet title to the subject property, and that plaintiffs' quiet title action was frivolous and devoid of arguable legal merit. We disagree. Plaintiffs also contend

-1-

that the trial court abused its discretion in awarding fees. We agree in part that the trial court provided inadequate analysis of the reasonableness of its award. We therefore vacate the trial court's award of attorney fees and remand for further analysis, but in all other respects we affirm.

## I. FACTUAL BACKGROUND

This case involves plaintiffs' action for quiet title to a 10-foot strip of land on Wamplers Lake in Cambridge Township, Lenawee County. In 1926, the 10-foot strip was conveyed as part of a larger parcel of land to Charles Lapham and Mary Lapham, who then split their property and created the 10-foot strip by conveying the strip to Carl Beier. On the same day that the strip was conveyed to Beier, Beier conveyed the strip back to the Laphams, as well as to William A. Gentner and Elizabeth Gentner, presumably so that the Gentners could freely access Wamplers Lake.

In 1932, an assessor's plat—"Supervisor's Plat No. 1"—was created and recorded. Within the plat, a 50-foot-wide parcel of land that included the 10-foot strip and 40 feet of land also owned by the Laphams was designated "Lot 56." The 10-foot strip of land creates the western border of the larger 50-foot-wide lot. Approximately nine years later, in 1941, the Laphams conveyed the eastern 40 feet of Lot 56 to Clarence Hoffman and Mary Hoffman, and following a series of conveyances, the eastern 40 feet of Lot 56 was ultimately conveyed to plaintiffs in 2013. No interest in the western 10-foot strip was ever conveyed, and by 1980, the Laphams and the Gentners had died. Consequently, any interest in the 10-foot strip is presumed to have passed to the Laphams' and Gentners' respective heirs. *Pollack v Fraser*, unpublished per curiam opinion of the Court of Appeals, issued May 30, 2017 (Docket Nos. 330540; 331241), p 2.

The prior appeal was brought by some of the present appellees in this case—Kenneth Pollack, Lynn Pollack, Douglas Taylor, Deborah Taylor, and Lynda Schilling. In 2014, those appellees brought an action against plaintiffs and the owners of Lot 55, which adjoins the western side of the 10-foot strip. Those appellees sought to keep plaintiffs and the owners of Lot 55 from constructing docks on their property that would interfere with appellees' usage of a dock constructed on the 10-foot strip. *Id*. at 1-4. The appellees contended, based upon an even earlier civil case from 1980, and based upon their predecessors in interest, that they had riparian rights connected to the 10-foot strip. *Id*. at 2. The trial court disagreed, dismissed appellees' complaint, and ultimately sanctioned appellees for making subsequent claims regarding adverse possession and a prescriptive easement that the trial court found to be frivolous. *Id*. at 2-4. In a split opinion, this Court affirmed.[1] *Id*. at 1, 10. Notably, because appellees' ownership interest in the 10-foot strip arises from quitclaim deeds that were executed during the pendency of the prior appeal, appellees did not claim any ownership interest in the 10-foot strip at the time. Consequently, the prior appeal and its underlying civil action are merely related to the instant appeal and of little practical relevance to the issues presently at bar.

---

[1] One of the signatories to this opinion dissented from the majority's conclusion in the prior appeal that the appellees in that case lacked riparian rights.

In 2016, plaintiffs filed the action for quiet title that led to the appeal in Docket No. 342113, naming defendants as the known heirs of the Laphams and Gentners, and thus, the successors in interest to the 10-foot strip. Plaintiffs also named any unknown heirs of the Laphams and Gentners as potential defendants. Plaintiffs contended that the creation of Supervisor's Plat No. 1 constituted a conveyance within the meaning of the Marketable Record Title Act (MRTA), MCL 565.101 *et seq.*, that merged the 10-foot strip with the eastern 40 feet of Lot 56 into a single, contiguous, 50-foot lot. As the record titleholders of the eastern 40 feet of Lot 56, plaintiffs contended that they were entitled to quiet title to the 10-foot strip because no interest in the strip had been asserted since it was initially conveyed in 1926.

Without filing an answer or otherwise participating in the case, defendants conveyed what interest they had in the 10-foot strip to appellees via quitclaim deeds. Appellees then filed an answer to plaintiffs' complaint and a motion for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), contending that plaintiffs' MRTA argument was without merit. Plaintiffs then brought their own motion for summary disposition pursuant to MCR 2.116(C)(9) and (C)(10), contending that appellees lacked standing to participate in the case. Specifically, plaintiffs argued that they had named defendants in their complaint as *potential* heirs to the Laphams and Gentners, and appellees had provided no evidence that defendants were the *actual* heirs. Thus, appellees had provided no evidence that the quitclaim deeds provided by defendants actually conveyed any interest in the 10-foot strip. Plaintiffs also filed a motion to strike appellees' pleadings based upon their lack of standing and procedural failure to file a motion to intervene. Finally, plaintiffs filed a motion for entry of a default judgment against any of the unknown heirs of the Laphams and Gentners that had failed to appear and respond to plaintiffs' complaint.

The trial court determined that plaintiffs never made any conveyance of an interest in the 10-foot strip, so the MRTA was inapplicable. Consequently, the trial court determined that it was plaintiffs that actually lacked standing in the case. The court further concluded that, by providing the quitclaim deeds with their motion for summary disposition, appellees had provided prima facie evidence of their interest in the 10-foot strip; therefore, they had standing. The court denied plaintiffs' motions for summary disposition, to strike, for a default judgment. The court then granted appellees' motion for summary disposition, and dismissed plaintiffs' complaint. Appellees then filed a motion for attorney fees and costs, which the trial court granted.

## II. STANDARDS OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). If the trial court looks beyond the pleadings and considers documentary evidence, we treat a motion for summary disposition under MCR 2.116(C)(8) or (9) if it had been brought and decided pursuant to MCR 2.116(C)(10). *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582; 794 NW2d 76 (2010); *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, we consider all evidence submitted by the parties in the light most favorable to the non-moving party and grant summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden*, 461 Mich at 120. "Our review is limited to

the evidence that had been presented to the [trial] court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

We review for an abuse of discretion a trial court's decision on a motion for entry of a default judgment, a trial court's decision on a motion to strike a pleading, and a trial court's award of attorney fees and costs. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011); *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 469; 666 NW2d 271 (2003); *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (TAYLOR, C.J.). "A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes." *Huntington Nat'l Bank*, 292 Mich App at 383. Factual findings underlying the trial court's decisions are reviewed for clear error. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 660; 819 NW2d 28 (2011), citing MCR 2.613(C). " 'A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made.' " *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008).

"Whether a party has standing presents a question of law that this Court reviews de novo." *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 136; 863 NW2d 344 (2014). Finally, statutory interpretation is a question of law that this Court also reviews de novo. *Fowler v Doan*, 261 Mich App 595, 598; 683 NW2d 682 (2004).

## III. DOCKET NO. 342113

Plaintiffs primarily contend that the trial court erred in denying their motion for summary disposition and their motion to strike, arguing that appellees lacked standing. We disagree.

### A. STANDING OF APPELLEES

Plaintiffs contend that appellees should not be entitled to participate in the case because they failed to establish that defendants were actually heirs of the original owners and thus had anything of value to assign to appellees. However, plaintiffs individually named defendants in the complaint based upon defendants' potential interest in the 10-foot strip. Had defendants appeared and filed their own answer to the complaint, it would have been nonsensical for plaintiffs to contend that defendants did not have standing to defend that interest. Defendants assigned their interest in the property, if any, to appellees. Therefore, appellees have the same right to defend that interest in an action for quiet title as defendants.

"The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Schools Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation omitted). Standing is unrelated to the merits of a case, because "[w]hen a party's standing is challenged in a case, the question is whether that person is a proper party to request adjudication of the issue, not whether the issue is justiciable." *Trademark Props*, 308 Mich App at 136. Standing may be established, in relevant part, "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large." *Lansing Sch*, 487 Mich at 372.

Plaintiffs contend that appellees failed to establish standing because they failed to provide any evidence that defendants ever had an interest in the subject property to assign. However,

-4-

plaintiffs' argument goes to the ultimate merits of their quiet title action, which is not a proper consideration to determine whether a party has standing. *Trademark Props*, 308 Mich at 137-138. In any event, the trial court properly determined that the quitclaim deeds from defendants to appellees were at least sufficient prima facie evidence of defendants' interest in the subject property to overcome summary disposition. Irrespective of the substantive merits of those deeds, they certainly constitute concrete evidence that defendants had an interest to convey. Taken in a light most favorable to appellees, the quitclaim deeds from defendants conferred standing on appellees to defend their potential interest in the subject property and challenge plaintiffs' quiet title action.

## B. MOTION TO INTERVENE

Plaintiffs also argue that appellees should have been required to file a motion to intervene prior to filing their answer to plaintiffs' complaint, because appellees were not named defendants in the complaint. Strictly speaking, plaintiffs are correct, and the trial court should have required such a motion. However, because appellees had a right to intervene, we may cure this procedural defect by permitting intervention *nunc pro tunc*. See *Tucker v Clare Bros Ltd*, 196 Mich App 513, 518-520; 493 NW2d 918 (1992).

MCR 2.209(A)(3) provides individuals with the right to intervene where "the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Because defendants conveyed whatever interest they had in the 10-foot strip, they were no longer able to defend any such potential interest, so appellees' potential interest could not be "adequately represented by existing parties." Given the nature of plaintiffs' quiet title action and the claim appellees contend to have to the subject property, appellees had a right to intervene in the case.

As noted, plaintiffs are correct in stating that appellees were required to apply to intervene pursuant to MCR 2.209(C), and appellees failed to do so. A trial court "may strike all or part of a pleading not drawn in conformity with [court] rules." MCR 2.115(B). However, the word "may" connotes discretion. *Old Kent Bank v Kal Kustom, Enterprises*, 255 Mich App 524, 532; 660 NW2d 384 (2003). Plaintiffs fail to explain how the trial court abused that discretion. Plaintiffs generally argue that any motion to intervene would not have been granted because of appellees' aforementioned alleged lack of standing. As discussed, appellees did not lack standing. Therefore, appellees are intervenors of right under MCR 2.209(A)(3). Had appellees properly filed a motion to intervene, it would have been properly granted, so plaintiffs have not shown how the trial court abused its discretion in declining to strike appellees' pleadings. It is appropriate under the circumstances to cure the procedural defect by permitting appellees to intervene *nunc pro tunc*. See *Tucker*, 196 Mich App at 518-520.

## C. MRTA APPLICABILITY

Plaintiffs next contend that the trial court erred in determining that the MRTA was inapplicable, and therefore that it was inappropriate to grant appellees' motion for summary disposition and dismiss plaintiffs' complaint based upon that determination. We disagree.

The MRTA applies to claimants with "an unbroken chain of title of record to any interest in land for 20 years for mineral interests and 40 years for other interests." MCL 565.101. Individuals with an unbroken chain of title of record for the applicable period are "considered to have a marketable record title to that interest." MCL 565.101. A person has an unbroken chain of title in land if the official public records evidence either:

> (a) A conveyance or other title transaction not less than 20 years in the past for mineral interests and 40 years for other interests, which conveyance or other title transaction purports to create the interest in that person, with nothing appearing of record purporting to divest that person of the purported interest.

> (b) A conveyance or other title transaction not less than 20 years in the past for mineral interests and 40 years for other interests, which conveyance or other title transaction purports to create the interest in some other person and other conveyances or title transactions of record by which the purported interest has become vested in the person first referred to in this section, with nothing appearing of record purporting to divest the person first referred to in this section of the purported interest. [MCL 565.102(1)(a) and (1)(b).]

Michigan law defines a "conveyance" as any "instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged or assigned; or by which the title to any real estate may be affected in law or equity." MCL 565.45. Plaintiffs' argument is reliant on section 6 of the MRTA, which provides:

> This act shall be construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons dealing with the record title owner, as defined in this act, to rely on the record title covering a period of not more than 20 years for mineral interests and 40 years for other interests prior to the date of such dealing and to that end to extinguish all claims that affect or may affect the interest dealt with, the existence of which claims arises out of or depends upon any act, transaction, event, or omission antedating the 20-year period for mineral interests and the 40-year period for other interests, unless within the 20-year period for mineral interests or the 40-year period for other interests a notice of claim as provided in section 3 has been filed for record. The claims extinguished by this act are any and all interests of any nature whatever, however dominated, and whether the claims are asserted by a person sui juris or under disability, whether the person is within or outside the state, and whether the person is natural or corporate, or private or governmental. [MCL 565.106.]

Plaintiffs' contend that the creation of Supervisor's Plat No. 1 constituted a conveyance within the meaning of MCL 565.102. They contend that, consequently, there has been an unbroken chain of title of record for over 40 years that gives plaintiffs marketable record title to the entirety of Lot 56 and extinguishes all other claims pursuant to MCL 565.106.

Plaintiffs rely extensively on this Court's opinion of *Affeldt v Lake Court Beach Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued January 29, 2015) (Docket No. 315277). Unpublished opinions are not binding under either stare decisis or the "first-out rule."

MCR 7.215(C)(1), MCR 7.215(J)(1). "[A] a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). In any event, the trial court properly determined that *Affeldt* was distinguishable because it did not involve the actual granting of ownership of real property. Rather, *Affeldt* found an easement extinguished after an assessor's plat was created that ignored the easement, *and* deeds were issued on the basis of the plat's unencumbered description of the subject property, *and* 40 years passed without any attempts by the plaintiffs to preserve their interest in the easement. *Affeldt* did not hold that the assessor's plat alone extinguished the easement, but that subsequent deeds to real property relied upon the plat, and subsequent purchasers of the property would not have understood the property to be encumbered by the easement based upon the plat. In contrast, the deeds in this matter issued after the creation of Supervisor's Plat No. 1 continued to distinguish the eastern 40 feet of Lot 56 from the western 10-foot strip.

Plaintiffs argue that the critical holding from *Affeldt* is that the creation of Supervisor's Plat No. 1 constituted a conveyance. Therefore, they argue that because neither the original owners nor their heirs asserted an interest in the 10-foot strip for 40 years, plaintiffs' predecessors became the marketable title holders to the entirety of Lot 56, including both the eastern 40 feet and the 10-foot strip, by operation of the MRTA. Presuming the creation of Supervisor's Plat No. 1 did constitute a conveyance, the deeds pertaining to Lot 56 *after* the creation of the plat continued to explicitly distinguish the eastern 40 feet from the 10-foot strip. In 1941, the Laphams did not convey their interest in the entirety of Lot 56; rather, they conveyed "the East forty (40) feet" of their property. When plaintiffs ultimately purchased the property in 2013, plaintiffs' deed described the property that was purchased as "The East 40 Feet of Lot 56." Plaintiffs ignore the point that the entire context of all transactions must be considered. Even if the creation of the plat merged the entirety of Lot 56, the 1941 deed would have effectively severed the lot a second time. The 1941 deed explicitly conveys only the eastern 40 feet of the lot, and plaintiffs have provided no evidence that any deed existing between the 1941 deed and plaintiffs' 2013 deed purported to convey anything else.

Even viewed in the light most favorable to plaintiffs, the deeds make it clear that neither plaintiffs nor their predecessors ever had an ownership interest in the western 10 feet of Lot 56. Without an unbroken chain of title of record to the 10-foot strip, the MRTA does not apply to plaintiffs' claim. Accordingly, the trial court correctly granted appellees' motion for summary disposition and dismissed plaintiffs' complaint.

## IV. DOCKET NO. 344010

Plaintiffs also contend that the trial court abused its discretion in determining that fees and costs were appropriate pursuant to MCR 2.114[2] and MCL 600.2591. We disagree as to appropriateness but remand as to reasonableness.

---

[2] MCR 2.114 was repealed by the Michigan Supreme Court effective January 1, 2019. However, the relevant subsections of MCR 2.114 were moved and now exist in full as parts of MCR 1.109. Because MCR 2.114 was in effect when the trial court entered its order, we will refer to that Court Rule.

A. APPLICABLE LAW

When the trial court's order was entered, MCR 2.114(D) and (E) provided, in pertinent part:

(D) Effect of Signature. The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that

* * *

(2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law . . .

* * *

(E) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

"Pursuant to MCR 2.114(D), an attorney is under an affirmative duty to conduct a reasonable inquiry into both the factual and legal basis of a document before it is signed." *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). "[I]f a violation of MCR 2.114(D) has occurred, the sanctions provided by MCR 2.114(E) are mandatory." *Id*. at 678.

MCL 600.2591 provides another basis for an award of attorney fees where a trial court finds a civil action or a defense to a civil action to be frivolous. The statute provides:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

* * *

-8-

(*iii*) The party's legal position was devoid of arguable legal merit.  [MCL 600.2591(1), (2), and (3).]

The trial court's determination that sanctions were appropriate under both MCR 2.114 and MCL 600.2591 was not outside the range of reasonable and principled outcomes.

## B.  MERITS OF PLAINTIFFS' CLAIM

As discussed, plaintiffs' claim to the western 10 feet of Lot 56 contravenes the explicit language of their deed.  The documentary evidence clearly establishes that plaintiffs purchased the eastern 40 feet of Lot 56 in 2013 and nothing else.  Even presuming that Supervisor's Plat No. 1 reunified the 10-foot strip and the eastern 40 feet into a single lot, the only documentary evidence in the record shows that the lot was again split in 1941.  Plaintiffs have provided no evidence that the unbroken chain of title to their portion of Lot 56 ever included property beyond the eastern 40 feet.  Thus, the trial court's conclusion that plaintiffs never had an interest in the 10-foot strip to support their filing of an action for quiet title was not clearly erroneous.  The trial court's determination that plaintiffs' action was not well grounded in fact or warranted by existing law, and that their position was devoid of legal merit, was not an abuse of discretion.

Plaintiffs contend that the trial court erroneously relied upon the prior opinion of this Court in determining that their complaint was frivolous.  We agree that ownership of the 10-foot strip was not at issue in the prior appeal, and nothing in the prior appeal could be taken as an adjudication of the ownership of the strip.  Nonetheless, we do not think it improper for the trial court to take note of this Court's dicta referencing the 10-foot strip,[3] especially because the trial court properly found plaintiffs' claim to be frivolous and devoid of merit based upon the deeds and other documentary evidence submitted in this case alone.

Plaintiffs also contend that appellees could not be entitled to fees because they did not "incur" costs pursuant to MCR 2.114(E) and MCL 600.2591(1).  Plaintiffs contend that appellees unilaterally inserted themselves into the case without being named as defendants, and thus, any costs incurred were of their own making and were not a result of plaintiffs' complaint.  Plaintiffs ignore, however, that this case was an action for quiet title to a piece of real property.  Irrespective of whether appellees were named in the complaint, to the extent that appellees had even a potential ownership interest in that property, it was necessary and reasonable for them to incur costs to defend it.  Apart from plaintiffs providing no law to support their argument that appellees did not technically incur costs as a result of plaintiffs' complaint, the argument is logically unpersuasive.

---

[3] "The record owners of the [10]-foot strip are William and Elizabeth Gentner and Charles and Mary Lapham, premised on a 1926 deed.  It appears uncontested that, sometime before 1980, all four of the record owners died without conveying away any interest they had in the [10]-foot strip.  Their interest in the strip is therefore presumed to pass to their respective heirs . . . " *Pollack,* unpub op at 2.

## C. REASONABLENESS OF FEES IMPOSED

Plaintiffs finally argue that appellees failed to adequately support the reasonableness of the attorney fees awarded. We decline to address whether appellees adequately supported their request, because our review is of the trial court's determination, and the trial court did not provide us with an adequate basis for review.

In determining the reasonableness of fees, trial courts must consider the factors provided in Rule 1.5(a) of the Michigan Rules of Professional Conduct:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent. [MRPC 1.5(a).]

Trial courts are to begin their analysis by "determining the fee customarily charged in the locality for similar legal services" by reference to "reliable surveys or other credible evidence of the legal market." *Smith*, 481 Mich at 530 (TAYLOR, C.J.). After determining the fee customarily charged in the locality, trial courts must consider the remaining factors "to determine whether an up or down adjustment is appropriate." *Id*. at 531. Trial courts should provide us with an analysis of the factors "in order to aid appellate review." *Id*. at 531.

Appellees retained their counsel at a rate of $300 an hour, which they contended was reasonable; plaintiffs argued that the appropriate rate should be no more than $125 an hour. The trial court determined the reasonable attorney fee rate to be $200 an hour. In so doing, the trial court referenced the Michigan State Bar's "2017 Economics of Law Practice," which the *Smith* Court explicitly noted could be a valuable tool in determining a reasonable hourly rate. *Smith*, 481 Mich at 530-532 (TAYLOR, C.J.). The trial court otherwise only made vague reference to "the time and labor required, the legal issues involved, and the other relevant factors." We do not doubt that the trial court gave the matter due consideration. However, this Court has explained that the entirety of the *Smith* factors must be considered under all fee-shifting statutes. *Kennedy v Robert Lee Auto Sales*, 313 Mich App 277, 285-301; 882 NW2d 563 (2015). A trial court abuses its discretion by failing to articulate more than a cursory basis for an attorney fee award, even where the trial court properly consulted the then-current version of the Economics

of Law Practice publication. See *id.* at 282, 302-303. We are therefore constrained to conclude that the trial court abused its discretion by providing us with such a cursory examination on the record in this case.

Additionally, the court provided even less analysis on the record of the reasonableness of the hours billed. The trial court provided a chart in its opinion which showed the number of hours billed in particular invoices next to the number of hours actually approved by the court. However, it is impossible to determine from the court's order which of the billed hours the trial court determined were reasonable, which hours the court determined were unreasonable, or why the trial court made those determinations. We are limited to considering the record, see MCR 7.210, and we cannot guess or presume. Therefore, although the trial court's award may in fact be reasonable, we cannot make any such determination on this record, and the trial court's cursory explanation of both the appropriate hourly fee and the reasonableness of the billable hours constituted an abuse of discretion. See *Kennedy*, 313 Mich App at 302-303.

## IV. CONCLUSION

In Docket No. 342113, the trial court's order denying plaintiffs' motion for summary disposition, denying plaintiffs' motion to strike and motion for a default judgment, granting defendants' motion for summary disposition, and dismissing plaintiffs' complaint is affirmed. In Docket No. 342113, appellees, being the prevailing party, may tax costs. MCR 7.219(A). In Docket No. 344010, the trial court's order for attorney fees and costs is affirmed to the extent the trial court found fees and costs warranted, but we vacate the award itself and remand for a more comprehensive determination as to the reasonableness of the amount. In Docket No. 344010, the parties shall bear their own costs, no party having prevailed in full. MCR 7.219(A). We retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens

-11-

# Court of Appeals, State of Michigan

## ORDER

Jeffrey B Fraser v Eileen Metty Rogers

Docket No. 344010

LC No. 16-005692-CH

Amy Ronayne Krause
Presiding Judge

Patrick M. Meter

Cynthia Diane Stephens
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Amy Ronayne Krause

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

September 24, 2019
Date

Chief Clerk