### ENGEL *v.* GILDNER.

1. EASEMENTS—PRESCRIPTION.
   Use of land of adjoining owners as part of driveway for more than 25 years constituted easement by prescription, where there was claim of right adverse to owners, which was known and acquiesced in by them.

2. SAME—EXTENSION OF EASEMENT.

    Use of driveway for more than prescriptive period does not establish easement in extension thereof which was used for less than statutory period.

Appeal from Kent; Perkins (Willis B.), J. Submitted June 12, 1929. (Docket No. 98, Calendar No. 34,211.) Decided October 7, 1929.

Bill by George Engel and another to restrain Eva Gildner and others from using a joint driveway. From a decree for defendants, plaintiffs appeal. Modified and affirmed.

*Emil B. Gansser,* for plaintiffs.

*Linsey, Shivel & Phelps,* for defendants.

BUTZEL, J. Plaintiff George Engel was at one time owner of a lot fronting 82½ feet on Paris avenue in the city of Grand Rapids, with two houses situated on the said lot. On September 20, 1902, or thereabouts, he sold on land contract either the southerly 40 or 41¼ feet of the property, together with the house on same, to Henry Gildner, husband of defendant Eva Gildner, father of defendant Marie Phillips, and father-in-law of defendant Emmet J. Phillips. These three defendants became interested in the property upon the death of Henry Gildner in 1927. The land contract has either been lost or destroyed. There is a dispute as to whether the land contract called for 40 or 41¼ feet of frontage. It is defendants' claim that Engel sold the southerly half of his property, which would call for 41¼ feet. The deed, given a few years later, was introduced as an exhibit in the case. It was first drafted to provide for the south 41¼ feet, but the words "one and one-

quarter feet'' were stricken out before delivery, so that the deed only called for 40 feet of frontage.

From the time of the giving of the deed until the time of the hearing, Gildner or his heirs paid taxes on the southerly 41¼ feet. This 1¼ feet of land is a part of a driveway in which defendants claim a perpetual easement as appurtenant to their property. This driveway is 8 feet wide and is situated on the most southerly side of plaintiffs' property. Defendants claim that the ''one and one-quarter'' feet belong to them and these words were erased from the deed without Gildner's knowledge or consent. The legal title to the 1¼ feet is not determined in this case. Payment of taxes by Gildner and the manner in which the rights in the property were considered for 25 years is of importance. Plaintiffs denied existence of this easement and brought this action to restrain the use of the driveway by defendants.

The equities in the case are with the defendants. The lots are 130 feet deep and run from Paris avenue in an easterly direction to the rear of the lot. There is no alley or street in the rear. From the time plaintiffs sold the property and up to and including the time of the hearing, the Gildner house has been located only from 4 to 4½ feet from the driveway. It is conceded that the coal chute was in the basement on the northerly side of the Gildner house, and that there is no ingress or egress to deliver coal or supplies to the rear of the Gildner property except by using the driveway. Plaintiffs at the hearing admitted the right to use the driveway for unloading coal and delivering supplies to the house was given to Gildner and practically conceded defendants' rights to the front part of the driveway. A very small portion of it, in addition to

the 1¼ feet in dispute, is located on defendants' land. Defendants claim that the right to use the driveway was given to them as an easement appurtenant to the land at the time plaintiffs sold it, and that plaintiffs acknowledged this fact.

The property on Paris avenue is on a grade, and defendants' property averages two feet higher than that of plaintiffs. It was necessary to build a retaining wall between the two lots. Plaintiffs built steps between the two lots so as to make the two properties more accessible to one another. This made it easier for defendants to reach the driveway. Plaintiffs claim the steps were built to enable an easier exchange of visits.

Henry Gildner's testimony was not available. He died in January, 1927. Up to that time there had been no dispute whatsoever in regard to the driveway. Shortly after his death plaintiffs presented a bill for $100, at the rate of $10 a year, for the use of the driveway. The case involves principally questions of fact.

It was some time after the purchase of the property by Gildner before plaintiff extended the driveway to a garage which he built on the rear of the land owned by him. It was not extended at the time Gildner bought the property, nor could there have been any use or need thereof by Gildner until many years later and then within 15 years prior to the time of the beginning of this suit. In 1918, he built a garage on the rear of his property. The use of the easterly or rear part of this driveway as extended was not in contemplation by the parties when Gildner bought his property, nor was it appurtenant to defendants' land at that time. Gildner, without any objection, broke through the retaining wall so as to connect a driveway to the garage he

had built on his own lot, with the main driveway in dispute. A further recital of the facts is of no benefit to the profession.

We believe the lower court was correct in ruling that, to the extent that the driveway had been used for 15 years and upwards, there is no question but that an easement by prescription exists. For 25 years the entire driveway, with the exception of the rear or easterly portion thereof, had been uninterruptedly used and enjoyed by Gildner and defendants. They continuously claimed this right and there was acquiescence by plaintiffs. All of the elements necessary to establish the prescriptive right are present. Such right is the same as title by adverse possession except that it is not exclusive. The identity of this part of the driveway had been fully established, and there was the claim of right adverse to plaintiffs which was known and acquiesced in by them. A similar state of facts has been frequently before this court. See *Outhwaite* v. *Foote,* 240 Mich. 327; *St. Cecelia Society* v. *Universal Car & Service Co.,* 213 Mich. 569; *Wortman* v. *Stafford,* 217 Mich. 554.

We do not, however, share the conclusions of the lower court which held that defendants had a permanent easement appurtenant to their land to the rear or easterly part of the driveway. The use of a driveway for more than the prescriptive period does not establish a right to an extension of a driveway which was not used by claimants for the prescriptive period. This extension was for the sole benefit of the owner of the property. The use of the extension of said driveway by Gildner and defendants, and the acquiescence in such use by the owner was for a period of less than 15 years. There is no doubt but that defendants established a right by prescription

to. the driveway for a reasonable distance beyond the line of the rear wall of their house if extended across the driveway. Vehicles had been continuously driven to this point in order to turn around. Beyond this point, however, there was no occasion for Gildner or defendants to go. The defendants, therefore, did not acquire any right to an easement to the rear or more easterly portion of the driveway. They did not use it for the prescriptive period. The defendants are, therefore, entitled to a prescriptive easement in the driveway to a point thereof to be determined by the circuit judge. This point should be a reasonable distance beyond the line of the rear wall of defendants' house, if such line were extended across the driveway, so that defendants will be able to turn their vehicles from the driveway into the rear of their own property and thus reach their garage. In order to connect the driveway with the rear of their property, it is equitable that defendants shall, as far as it may be necessary, break down the retaining wall which the lower court found to be on their property.

The decree of the lower court is modified to this extent. It is otherwise affirmed, with costs to plaintiffs.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.